Stanislaw Mikolajczyk v. Commissioner.
Mikolajczyk v. Commissioner
Docket No. 47945.
United States Tax Court
T.C. Memo 1955-165; 1955 Tax Ct. Memo LEXIS 177; 14 T.C.M. (CCH) 633; T.C.M. (RIA) 55165; June 23, 1955
George A. Wood, Esq., 2 Wall Street, New York, N. Y., and Augustus W. Kelley, III, Esq., for the petitioner. Robert A. Bridges, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined a deficiency in petitioner's income tax for the year 1947 in the amount of $8,809.45. The sole issue is whether petitioner is entitled to a deduction under section 23(e), Internal Revenue Code of 1939 by reason of the confiscation of his property located in Poland. Findings of Fact Some of the facts were stipulated and are so found and made a part hereof by this reference. Petitioner is now a resident of Washington, District of Columbia. He filed his income tax return for the calendar year 1947 with the then *178 collector of internal revenue for the third district of New York. Petitioner arrived in the United States on November 26, 1947, and has continuously since then resided in the United States, and he expects to continue so to do. He was, until October, 1947, a resident and citizen of Poland, at which time it became necessary for him to escape from that country, due to the fact that he was the leader of the opposition to the Communist Party in Poland, which had taken over the government of that country. The Department of State authorized the issuance of a visa for petitioner's entry into the United States and waived passport requirements. Petitioner has held the following public offices: (a) Deputy Prime Minister of the Polish Government in exile; (b) Prime Minister of the Polish Government in exile; (c) Vice-Premier and Minister of Agriculture in Provisional Government of Poland formed pursuant to the Yalta Agreement; (d) Member of the Polish Parliament. On or about November 15, 1947, the Polish Parliament proclaimed the petitioner guilty of treason against the Polish State and Nation, and requested the Polish Government to take away his Polish citizenship, and on November 22, 1947, the *179 Polish Government stripped the petitioner of his Polish citizenship. Upon petitioner's departure from Poland in October 1947, he left certain property located in that country of which he was the owner, which was confiscated by the Polish Government and for which he has never been compensated. The property so confiscated was as follows: (1) A farm in the village of Miedylesie, County of Wargrowieg, Province of Poznan, Poland, which he purchased in 1927 and continued thereafter to own and operate. The farm consisted of land, buildings, equipment and livestock thereon, and the cost of same to petitioner, after allowing proper depreciation thereon, up to and including the year 1947, was 2,180,140 Polish zlotys, or $28,580.69. When petitioner was in Warsaw as an official of the government, his brother-in-law lived in a tenant house on the farm and operated it for him. Petitioner was educated in a Polish agricultural college and his avocation has always been that of a farmer, and he has engaged in farming since coming to the United States. (2) A house in Warsaw, Poland, which he had acquired in September 1945 by virtue of a Polish law which permitted any person, who would rebuild *180 a war devastated house at his own expense, to occupy such house for his lifetime with like right in his children after his death. The petitioner at his own expense rebuilt, equipped and furnished such a house in Warsaw, Poland, and occupied it thereafter until October 1947, when he fled the country. The cost to petitioner in rebuilding, renovating and furnishing the house in Warsaw was $15,522. Petitioner used approximately threequarters of the Warsaw house for the conduct of his official business as a member of the Polish Government, member of the Polish Parliament and leader of the opposition to the Polish Communist Party. The balance of the premises was used as living quarters for himself, his secretary and the caretaker. The confiscation by the Polish Government of private property located in Poland was a common occurrence during 1947, and property was frequently confiscated without the property owner having lost his Polish citizenship. However, under the law and administrative procedures in force in Poland during 1947, a decision of the Polish Government, based upon Parliamentary recommendation, to deprive a person of his citizenship was invariably followed by a second decision *181 of the Government to confiscate such person's property and, thereafter, to actually confiscate same. Under these laws and procedures, confiscation did not occur until the completion of certain steps taken after the decision to confiscate, the last of which steps was taken by local authorities at the situs of the property. The petitioner's Warsaw and Miedylesie properties were confiscated in accordance with these procedures. The Polish Government made its decision to deprive the petitioner of his citizenship on November 22, 1947. Under Polish law and procedure in force during 1947, the minimum time after that decision within which the petitioner's property could have been confiscated was eleven days, and the maximum time by which it must have been confiscated was from three to four weeks. Petitioner's property in Poland, described in (1) and (2) above, was confiscated by the Polish Government in the month of December, 1947, and at that time he sustained a loss on (1), his Polish farm property, in the amount of $28,580.69, and on (2) his Warsaw property, in the amount of $15,522, 75 per cent of which sum is deductible under section 23(e), Internal Revenue Code of 1939. At any time *182 after petitioner left Poland and up to the date of completion of the steps necessary to effect a confiscation of his Polish farm properties, the petitioner had the right to sell same. In petitioner's income tax return for 1947 he claimed a deduction of $46,000 for loss from confiscation of his property by the Government of Poland, which was disallowed by the Commissioner on the ground that it "has not been substantiated and is held not to constitute a proper deduction under any of the provisions of the Internal Revenue Code." Opinion It is well established that losses resulting from confiscation or sequestration of a taxpayer's property by a foreign power are losses deductible under section 23(e) of the Internal Revenue Code, if other requirements of that section are met. United States v. S. S. White Dental Mfg. Co., 274 U.S. 298 [398]; Andrew P. Solt, 19 T.C. 183; Eugene Houdry, 7 T.C. 666. This also applies when the taxpayer is a resident alien. David Schnur, 10 T.C. 208; J. A. C. Steur, 7 T.C. 1075. Respondent on brief rests his contention upon a single point to the effect that the *183 loss in question was sustained by petitioner prior to his arrival in the United States on November 26, 1947, and hence he was a non-resident alien when the loss occurred and no part of same is deductible. Respondent asserts "there is no documentary evidence or testimony in the record giving the specific or exact date that petitioner's property was lost, therefore the date of the loss must be inferred from the entire record." He further states: "* * * respondent does not seek to unduly emphasize petitioner's burden of proof in the instant proceeding, nor does he seek to rely upon the recognized obstacles which the present international situation placed in the petitioner's way with respect to furnishing more direct and specific evidence in the form of documents and testimony of other witnesses. Respondent's position that no amount of the loss is deductible is not based upon any lack of evidence in the record. To the contrary, respondent contends that the evidence clearly supports his position." "His position" he states on brief as follows: "* * * Respondent contends that the only inference that can be drawn from a realistic appraisal of the record is that petitioner's property *184 was irretrievably lost or had become worthless prior to November 26, 1947, due to the circumstances under which petitioner left Poland." Petitioner contends that the loss occurred on the date his property was confiscated by the Polish Government "which under Polish law and procedure would not have occurred prior to December 3, 1947, nor later than December 20, 1947." Due to the present international situation and the relations existing between our Government and Poland, petitioner was unable to produce records or other evidence as to the date of the confiscation of his property, and in lieu of same made proof that under the facts here, and the practice and procedure employed by the Polish Government in 1947 in the confiscation of property, the earliest date petitioner's property could have been confiscated would have been December 3, 1947, and the latest December 20, 1947. See Eugene Houdry, supra. Petitioner and his expert witness both so testified, and both were shown to be well qualified to testify with reference thereto. Petitioner's expert witness was a well educated lawyer who practiced law in Poland for a number of years, and also served as judge of several *185 high courts in Poland. Respondent does not seek to refute or discredit this evidence. The issue presented is purely factual. Did the loss in question occur prior to November 26, 1947, "due to the circumstances under which petitioner left Poland" as respondent contends, or did it occur in December 1947, when the Polish Government confiscated the property, as petitioner contends? Undoubtedly the Polish Government had deprived petitioner of his personal and political rights prior to November 26, 1947, the date of his entry into the United States. There is, however, a distinction between personal rights and property rights, and deprival of one does not necessarily constitute deprival of the other. Adjudging one guilty of crime and depriving him of his citizenship does not automatically deprive him of his property. The Polish Government so recognized and took steps to effectuate the latter. From the evidence here it appears that the Polish Government took no step to deprive petitioner of his property until confiscation proceedings were instituted. While we recognize that the mere retention of legal title does not preclude the taking of a loss deduction, if the worthlessness of the *186 property is otherwise satisfactorily established, as held in Wladimir Von Dattan, 22 T.C. 850, cited by respondent, the facts in the instant case do not satisfactorily establish the worthlessness of the property prior to the date of its confiscation. The test in a case of this kind is the determination of the identifiable event when the loss occurred, and the facts of each case differ, and each must be determined from the facts established therein. Here the undisputed evidence shows that even after petitioner had left Poland, and until the completion of the confiscation proceedings, petitioner had the right to sell his Polish farm properties. Considering the evidence and the record as a whole, we think the identifiable event in the instant case when the loss occurred was in December, 1947, when petitioner's property was confiscated by the Polish Government. We hold under section 23(e), Internal Revenue Code of 1939, that the amount deductible as to (1), the Polish farm properties, is the sum of $28,580.69, and as to (2), the house in Warsaw, the amount deductible is $11,642. As to the latter we have disallowed 25 per cent of the loss claimed, since the property to *187 that extent was used by petitioner for his personal use and not in his trade or business. Decision will be entered under Rule 50.